1  **SARA M. PELOQUIN**
   California State Bar No.254945
2  **KRIS J. KRAUS**
   California State Bar No. 233699
3  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
4  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
5  Email: sara_peloquin@fd.org
   Email: kris_kraus@fd.org
6
   Attorneys for Mr. Gonzalo Arredondo-Ortiz
7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                   **(HONORABLE IRMA E. GONZALEZ)**

11

12 | UNITED STATES OF AMERICA, | ) | CASE NO.   08CR0338-IEG
   |                          | ) | DATE:      April 1, 2008
   |        Plaintiff,        | ) | TIME:      2:00 p.m.
13 |                          | ) |
   | v.                       | ) | STATEMENT OF FACTS AND
14 |                          | ) | MEMORANDUM OF POINTS AND
   | GONZALO ARREDONDO-ORTIZ, | ) | AUTHORITIES IN SUPPORT OF
15 |                          | ) | MR. ARREDONDO-ORTIZ'S MOTIONS
   |        Defendant.        | ) |
16 |_____| ) |

17                                   **I.**

18                          **STATEMENT OF FACTS**[1]

19

20      On January 23, 2008, Border Patrol Agent Abellon responded to seismic sensor activation in an area

21 known as "Spooner's Mesa" just north of the United States-Mexico border.  Agent Abellon found six

22 individuals concealed in the brush and questioned them regarding their immigration status.  All six, are

23 alleged to have admitted being citizens of Mexico with no legal right to enter or remain in the United States.

24      After the individuals were transferred to the Imperial Beach Border Patrol Station one was identified

25 as Gonzalo Arredondo-Ortiz. Records checks revealed that Mr. Arredondo-Ortiz had a criminal and

26 immigration history. Prosecution was authorized.  It is alleged that Mr. Arredondo-Ortiz was advised of his

27 _____

28      [1]The following statement of facts is based on materials received from the government.  Mr.
   Arredondo-Ortiz does not accept this statement of facts as his own, and reserves the right to take a
   contrary position at motion hearings and trial.  The facts alleged in these motions are subject to
   amplification and/or modification at the time these motions are heard.

1  Miranda rights and agreed to be interrogated. He is alleged to have made inculpatory statements.

2        On February 13, 2008 the grand jury returned a true bill of indictment charging Mr. Arredondo-Ortiz
3  with one count of violating 8 U.S.C. § 1326(a) & (b) -Deported Alien Found in the United States.  These
4  motions follow.

5                                        **II.**

6                       **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

7        Mr. Arredondo-Ortiz moves for the production of the following discovery.  This request is not
8  limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in
9  the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
10 United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

11       To date, ***defense counsel has received only fifty-nine  pages of discovery***.  Mr. Arredondo-Ortiz
12 respectfully requests that the government be ordered to produce discovery because Mr. Arredondo-Ortiz has
13 reason to believe that he has not received all the discoverable material in his case. Mr. Arredondo-Ortiz
14 specifically requests production of a copy of the taped proceedings and any and all documents memorializing
15 the deportation proceedings allegedly held and any other proceedings that the government intends to rely upon
16 at trial. This request includes discovery of materials known to the government attorney, as well as discovery
17 of materials which the government attorney may become aware of through the exercise of due diligence. See
18 FED. R. CRIM. P. 16.

19       Mr. Arredondo-Ortiz has also not received a full copy of his A-file. Mr. Arredondo-Ortiz filed a
20 request for his A-file with the National Records Center pursuant to the Freedom of Information Act, however,
21 he fears that his request will not be processed until after the completion of his trial. Thus, Mr. Arredondo-
22 Ortiz requests a full copy of his A-file and any other immigration files linked to his immigration history.
23 Mr. Arredondo-Ortiz specifically requests the documents memorializing the alleged deportation proceedings
24 and any other proceedings that the government intends to rely upon at trial.

25       Mr. Arredondo-Ortiz additionally requests that the Court order the government to allow him the
26 opportunity to review his A-file in its entirety. First, the A-file contains documentation concerning his alleged
27 deportation. Part of Mr. Arredondo-Ortiz defense may be that his underlying deportation was invalid. The
28 documents in the A-file would help illuminate the validity or futility of such a defense. For example, A-file

documents typically contain biographical information. Such information is essential to determining whether Mr. Arredondo-Ortiz's deportation was invalid.

Second, the government will likely try to show at trial that a government officer searched the A-file and did not find an application by Mr. Arredondo-Ortiz for permission to enter the United States. Mr. Arredondo-Ortiz anticipates that the government will attempt to admit a "Certificate of Non-Existence of Record" against him, arguing that if Mr. Arredondo-Ortiz had ever applied for permission to enter the United States, such an application would be found in the A-file and because such an application is not in the A-file, Mr. Arredondo-Ortiz must not have applied for permission to enter the United States.

Although the certificate might be admissible, the question of the thoroughness of the search conducted by the government of the A-file is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation."). Mr. Arredondo-Ortiz should be able to review his A-file in order to see whether any application for lawful admission exists. Moreover, Mr. Arredondo-Ortiz should also be able to verify whether other documents that would ordinarily be in the A-file are "non-existent," or otherwise missing from his A-file. Mr. Arredondo-Ortiz may assert a defense that his application for lawful entry was lost or otherwise misplaced by the government. He must be allowed the opportunity to review his A-file and the manner in which it is being maintained by the government in order to present this defense.

In addition, Mr. Arredondo-Ortiz moves for the production by the government of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of *any government agency*. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

Mr. Arredondo-Ortiz moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1)   Mr. Arredondo-Ortiz's Statements. The government must disclose to Mr. Arredondo-Ortiz all copies of any written or recorded statements made by him; the substance of any statements made by Mr. Arredondo-Ortiz which the government intends to offer in evidence at trial -- either in its case-in-chief

or in rebuttal; see id., any response by him to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of Mr. Arredondo-Otiz's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to him; as well as any other statements by Mr. Arredondo-Ortiz. Fed. R. Crim. P. 16(a)(1)(A)[2]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must reveal all the accused's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed "to protect the defendant's rights to a fair trial." United States v. Rodriguez, 799 F.2d 649 (11th Cir. 1986); see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

(2) <u>Arrest Reports and Notes</u>. Mr. Arredondo-Ortiz also specifically requests that the government turn over all arrest reports, notes and TECS records not already produced that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of Mr. Arredondo-Ortiz or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); see also United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming Harris' holding).

(3) <u>Brady Material</u>. Mr. Arredondo-Ortiz requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Kyles v. Whitley, 514 U.S. 419 (1995). Under Brady, Kyles and their progeny, impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused. See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976). This

---

[2] Of course, any of Mr. Arredondo-Oritz's statements, which are exculpatory, must be produced, as well. See Brady v. Maryland, 373 U.S. 83 (1963).

includes information obtained from other investigations which exculpates Mr. Arredondo-Ortiz

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The government must also produce this information under <u>Brady v. Maryland</u>. This request includes any cooperation or attempted cooperation by Mr. Arredondo-Ortiz as well as any information, including that obtained from other investigations or debriefings, that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. Mr. Arredondo-Ortiz also requests any information relevant to a Chapter Three adjustment, a determination of his criminal history, and information relevant to any other application of the Guidelines.

(5) <u>Mr. Arredondo's Prior Record</u>. Mr. Arredondo-Oritz requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for which introduction is sought. This applies not only to evidence which the government may seek to introduce in its case-in-chief, but also to evidence which the government may use as rebuttal. <u>See</u> <u>United States v. Vega</u>, 188 F.3d 1150 (9th Cir. 1999). Mr. Arredondo-Ortiz is entitled to "reasonable notice" so as to "reduce surprise," preclude "trial by ambush" and prevent the "possibility of prejudice." <u>Id.</u>; <u>United States v. Perez-Tosta</u>, 36 F.3d 1552, 1560-61 (11th Cir. 1994). Mr. Arredondo-Ortiz requests such reasonable notice at least two weeks before trial so as to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. Mr. Arredondo-Ortiz requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) <u>Request for Preservation of Evidence</u>. Mr. Arredondo-Ortiz specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Arredondo-Ortiz's personal effects, and any evidence seized from Mr. Arredondo-Ortiz or any third party in relation to this case.

1  In addition, Mr. Arredondo-Ortiz requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material.  Kyles, 514 U.S. at 419; United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Lacy, 896 F.Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

(9)  Tangible Objects.  Mr. Arredondo-Ortiz requests the opportunity to inspect and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Arredondo-Ortiz.  Fed. R. Crim. P. 16(a)(1)(E).  Specifically, to the extent they were not already produced, Mr. Arredondo-Ortiz requests copies of all photographs in the government's possession, including, but not limited to, photographs of himself and any other photos taken in connection with this case.

(10)  Expert Witnesses.  Mr. Arredondo-Ortiz requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief.  Fed. R. Crim. P. 16(a)(1)(G).  The defense requests that notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions and credentials of the government's expert.  The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert.  See Kumho v. Carmichael Tire Co. 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . ..").

(11)  Evidence of Bias or Motive to Lie.  Mr. Arredondo-Ortiz requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(12)  Impeachment Evidence.  Mr. Arredondo-Ortiz requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland.

(13) <u>Evidence of Criminal Investigation of Any Government Witness</u>. Mr. Arredondo-Ortiz requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(14) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(15) <u>Jencks Act Material</u>. Mr. Arredondo-Ortiz requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at Mr. Arredondo-Ortiz's request to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes are subject to Jencks Act).

(16) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), Mr. Arredondo-Ortiz requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(17) <u>Agreements Between the Government and Witnesses</u>. In this case, Mr. Arredondo-Ortiz requests identification of any cooperating witnesses who have committed crimes, but were not charged, so that they may testify for the government in this case. Mr. Arredondo-Ortiz also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about, or

advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

(18)   <u>Informants and Cooperating Witnesses</u>.  Mr. Arredondo-Ortiz requests disclosure of the names and addresses of all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Arredondo-Ortiz.  The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  The government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Arredondo-Ortiz.

(19)   <u>Bias by Informants or Cooperating Witnesses</u>.  Mr. Arredondo-Ortiz requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(20)   <u>Inspection and Copying of A-File</u>.  Mr. Arredondo-Ortiz requests that this Court order the government to make all A-Files relevant to Mr. Arredondo-Ortiz available for inspection and copying.

(21)   <u>Residual Request</u>.  Mr. Arredondo-Ortiz intends, by this discovery motion, to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  Mr. Arredondo-Ortiz requests that the government provide his attorney with the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## III.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Arredondo-Ortiz and defense counsel have received fifty-nine pages of discovery in this case. As new information surfaces due to the government providing discovery in response to these motions or an

1  order of this Court, defense will find it necessary to file further motions, or to supplement existing motions
2  with additional facts.  Therefore, defense counsel requests the opportunity to file further motions based upon
3  information gained from discovery.

## IV.
## CONCLUSION

For the reasons stated above, Mr. Arredondo-Ortiz moves this Court to grant his motions.

                                                            Respectfully submitted,

DATED:  March 10, 2008          */s/ Sara M. Peloquin*
                                **SARA M. PELOQUIN**
                                Federal Defenders of San Diego, Inc.
                                Attorneys for Gonzalo Arredondo-Ortiz